Donald F. Campbell, Jr.
GIORDANO, HALLERAN & CIESLA
A Professional Corporation
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701-6777
(732) 741-3900

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| ORION HEALTHCORP, INC. | : | Case No. 18-71748 (AST) |
| Debtors. | : | (Jointly Administered) |
| HOWARD M. EHRENBERG IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF ORION HEALTHCORP, INC., ET AL., | : | Adv. Pro. No. 20-08042 (AST) |
| Plaintiff, | : | |
| v. | : | |
| HOWARD M. SCHOOR, | : | |
| Defendants. | : | |

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

SUMMARY OF DEFENDANT'S OPPOSITION ...................................................................... 1

COUNTER-STATEMENT OF MATERIAL FACTS ................................................................ 3

        A. The Underlying Transaction ................................................................................. 3

        B. The Diversion of the Debtor's Funds .................................................................... 5

        C. Parmar and Zaharis Create a Consulting Agreement In Order to Provide
           Support for the Transfers ....................................................................................... 6

LEGAL ARGUMENT ................................................................................................................. 7

        A. Standard for Summary Judgment .......................................................................... 7

        B. Based on the Current Record Plaintiff Has Not Proved That the Transfers
           to Defendant Are Intentionally Fraudulent ............................................................ 8

           i. Plaintiff Has Not Proved A Lack of Consideration ....................................... 11

           ii. The Family, Friendship, or Close Association Between the Parties ............... 12

           iii. The Retention of Possession, Benefit, or Use of Property in Question .......... 12

           iv. The Financial Condition of the Party Sought to Be Charged Both
              Before and After the Transaction in Question .............................................. 12

           v. The Existence or Cumulative Effect of a Pattern or Series of
             Transactions or Course of Conduct after the Incurring of the Debt,
             Onset of Financial Difficulties, or Pendency or Threat of Suits by
             Creditors; and The General Chronology of the Events and
             Transactions Under Inquiry ........................................................................... 13

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 7

*Gentry v. Kovler (In re Kovler)*, 249 B.R. 238 (Bankr. S.D.N.Y. 2000) ...................................... 10

*Glinka v. Bank of Vt. (In re Kelton Motors, Inc.)*, 130 B.R. 170 (Bankr. D. Vt. 1991) .................. 9

*GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377 (2d Cir. 2006) .................. 9

*Hayut v. State Univ. of N.Y.*, 352 F.3d 733 (2d Cir. 2003) ............................................................ 7

*In re HBE Leasing Corp.*, 61 F.3d at 1059 n.5 ............................................................................ 10

*In re Hydrogen*, 431 B.R. 337 (Bankr. S.D.N.Y. 2010) ................................................................. 9

*In re Kaiser*, 722 F.2d 1574 (2d Cir. 1983) ................................................................................. 11

*Jacobs v. Jacobowitz (In re Jacobs)*, 394 B.R. 646 (Bankr. E.D.N.Y. 2008) ............................... 9

*Kittay v. Flutie N.Y. Corp. (In re Flutie N.Y. Corp.)*, 310 B.R. 31 (Bankr. S.D.N.Y. 2004) ....................................................................................................................................... 10

*McCord v. Ally Fin., Inc. (In re USA United Fleet, Inc.)*, 559 B.R. 41 (Bankr. E.D.N.Y. 2016) ......................................................................................................................................... 9

*McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 47 (Bankr. S.D.N.Y. 2010) ............................................................................................................................. 9

*Messer v. Wei Chu (In re Xiang Yong Gao)*, 560 B.R. 50 (Bankr. E.D.N.Y. 2016) .................... 12

*MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913 (S.D.N.Y. 1995) ..................................................................................................................... 10

*Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.)*, 376 B.R. 390 (Bankr. S.D.N.Y. 2007) ................................................................................................................. 11

*Rodriguez v. Cyr (In re Cyr)*, 602 B.R. 315 (Bankr. W.D. Tex. 2019) ....................................... 12

*Secs. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293 (Bankr. S.D.N.Y. 1999) ............ 10

*Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43 (2d Cir. 2005) ............................................................................................................................... 10

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791 (Bankr. S.D.N.Y. 2005) ......................................................................................................................... 9

*Smith v. Goord*, 2008 U.S. Dist. LEXIS 26099, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008) ................................................................................................................................ 7

*U.S. v. McCombs*, 30 F.3d 310 (2d Cir. 1994) ............................................................................. 10

*Wall St. Assocs. v. Brodsky*, 257 A.D.2d 526, 684 N.Y.S.2d 244 (1st Dep't 1999) ..................... 10

## Rules

Bankruptcy Rule 7054 ............................................................................................................. 14

Fed. R. Bankr. P. 7056 .............................................................................................................. 7

FED. R. CIV. P. 54(d)(2) ........................................................................................................... 14

Fed. R. Civ. P. 56(a) ................................................................................................................. 7

## Regulations

§ 548(a)(1)(A) ............................................................................................................ 1, 9, 10, 11

§ 548(a)(1)(A) of the Bankruptcy Code .................................................................................. 1, 9

11 U.S.C. § 548(a)(1)(A) ........................................................................................................... 9

Code § 544(b) ............................................................................................................................ 9

New York Debtor & Creditor Law § 276 ..................................................................... 1, 9, 10, 11

## PRELIMINARY STATEMENT

Howard Schoor (the "Defendant"), by and through the undersigned counsel, hereby opposes Plaintiff's Motion for Summary Judgment or in the Alternative, Summary Adjudication (the "Motion"), as against Defendant and in support of this opposition hereby states as follows:

## SUMMARY OF DEFENDANT'S OPPOSITION

Through the Motion, the Liquidating Trustee, as Plaintiff, seeks to recover two allegedly fraudulent transfers from Debtor, Constellation Healthcare Technologies, Inc. ("CHT" or the "Debtor"), to the Defendant in the total amount of $160,000, which occurred in January of 2017 (the "Transfers"). Specifically, the Plaintiff, seeks to recover these transfers as intentionally fraudulent pursuant to § 548(a)(1)(A) of the Bankruptcy Code and New York Debtor & Creditor Law § 276. *See* Complaint, ¶¶22, 23. These Transfers came at the direction of Paul Parmer ("Parmer"), CHT's CEO at the time and were in partial satisfaction of a loan Defendant gave to Parmer in 2009. Specifically, in June of 2009, Defendant loaned Parmer $600,000 for which Defendant believed and was advised would be used to sustain business operations in one or more of the business's Parmar was involved in. Parmer defaulted on the initial terms of this loan, but by 2010 had repaid $500,000 to Defendant. The Transfers in question were to repay the remaining principal from the loan plus $60,000 in interest as had been agreed to between Defendant and Parmer.

In order for the Court to grant summary judgment, Plaintiff must prove by clear and convincing evidence that the above-referenced Transfers were made by the Debtor with actual intent to hinder, delay, or defraud a creditor. For the purposes of the current Motion, this is the dispositive element under both § 548(a)(1)(A) and New York Debtor & Creditor law § 276. Accordingly, Defendant's opposition will focus on how Plaintiff has failed to meet its burden to

1

prove that the Debtor engaged in intentionally fraudulent conduct when it transferred the $160,000 in funds to Defendant in January of 2017.

In particular, it is notable that Plaintiff has offered no testimonial evidence reflecting Parmer's or other employees of the Debtor's mental state immediately before or after the Transfers were initiated. Instead, Plaintiff relies on various emails between Parmer, Chief Financial Officer, Sam Zaharis, and other CHT or Orion HealthCorp, Inc. employees to show the $160,000 was abruptly directed to be transferred by Parmar, despite the balance of CHT's operating account at the time of Transfers being close to having insufficient funds.

Indeed, this is why the $160,000 was transferred to Defendant over two days in two separate transactions, first for $100,000 and then an additional $60,000. While these emails show improper business and accounting practices, they do not display any intent of the Debtor entity to hinder, defraud, or even delay payments past their due date to present, future creditors, or past creditors. This fact is reflected in the emails Plaintiff cites in support of the Motion. To wit, the January 4, 2017 email at 17:56:35 from Sam Zaharis to Ravi Chivukula, presumably an accounting employee at Orion HealthCorp, Inc., states that in order to pay Defendant the full $160,000 from CHT the company would have to short pay "India" and could make up the shortfall on Friday or the following Monday. *See* email attached as Exhibit 2 to the Affidavit of Edith Wong in Support of Plaintiff's Motion (Ehren-Schoor 039). Further, an email sent the next day, January 5, 2017, from Rachelle Dolan, Orion HealthCorp.'s accounting manager, to Ravi Chivukula states that a wire transfer to "Porteck India" for payroll in the amount of $330,000 is authorized and should be released. *See* email attached as Exhibit 3 to the Affidavit of Edith Wong (Ehren-Schoor 047). A follow up email from Dolan to Chivukula and carbon copied to Zaharis states that the "India payroll [was] due 1/6." *See* email attached as Exhibit 3 to the Affidavit of Edith Wong (Ehren-

Schoor 046). In sum, after reviewing these emails in proper sequence, it seems that the Debtor merely prioritized the payment of Defendant ahead of its payroll payment and was nonetheless able to meet its payroll obligation before its January 6, 2017 due date. Accordingly, the emails referenced above do little to prove that the Debtor or Parmer hindered, defrauded, or delayed payments to any existing or future creditors. Put simply, despite prioritizing the Transfers to Defendant, the Debtor was able to pay its payroll debt on time and in full.

Likewise, Plaintiff's reliance on the allegedly fraudulent consulting agreement between CHT and Defendant which was drafted by Parmer and Zaharis to justify the $160,000 in transferred funds fails to prove that Parmer or the Debtor made the Transfers to Defendant with the intention of defrauding, hindering, or delaying his past or future creditors. Put another way, while they Debtor, at the direction of Parmer, may have engaged in defalcation and misconduct by paying a debt that the Debtor itself was not liable on, this does not prove that the Transfers were done with the intent of inhibiting payment to other creditors.

Based on the foregoing, Plaintiff's motion for summary judgment should be denied in its entirety and a trial should be ordered as to all claims.

## COUNTER-STATEMENT OF MATERIAL FACTS

**A.     The Underlying Transaction**

1.     Defendant is the former neighbor and friend of Parmar. *Se*e Docket No. 22, Joint Statement of Facts ("JSOF"), #1.

2.     On June 8, 2009, Defendant personally loaned $600,000.00 to Parmar (the "Loan") as memorialized in a promissory note. *See* JSOF, #2. According to the Promissory Note, Parmar owed principal and interest to Defendant due on or before October 8, 2009, at which time the entire outstanding principle balance and all accrued interest were due and payable in full. *See* JSOF, #3.

3. Defendant did not ask Parmar for details as to how he was going to use the Loan funds. *See* JSOF, #4. However, there was an understanding between the parties that the loan would be used to help Parmer meet his obligations for payroll and other expenses relative to the businesses that he was involved in. *See* Defendant's Deposition at 107, attached as Exhibit B to the Affidavit of J. Nolan in support of Plaintiff's Motion. The wire instructions provided by Parmar were to credit the funds to a Merrill Lynch account and Funky Buddha Media, LLC. *See* JSOF, #5.

4. On August 31, 2009, Schoor sent a letter to Parmar advising that October 8, 2009 was the outside date for repayment and "you clearly indicated your need was for a few weeks of payroll while you resolved an IRS lien placed on multiple accounts and freed up other assets. Your request and my reply was based on "our friendship" and not a business deal." *See* JSOF, #7.

5. On November 2, 2009, Defendant's counsel sent a letter to Parmar that the Loan was in default. *See* JSOF, #8.

6. On August 16, 2010, Schoor sent an e-mail to Parmar stating, in part, "I would greatly appreciate payment on the balance of your personal loan. Again, I repeat that this loan was done on the basis of our "friendship" not as a business investment. I can certainly understand losses related to business endeavors where one invests dollars with anticipation of profits. We both know that this is not the instant case and you have an obligation to make good on your commitment which is long overdue." *See* JSOF, #9.

7. On September 29, 2010, an Order Entering Final Judgment By Default, and on November 23, 2010, a Final Judgment and Writ of Execution against Goods and Chattels was issued against Parmar in favor of Red Line Air, LLC in the amount of $16,719,529.58. The judgment attached to all personal property of Parmar including all personal property located at his

residence located at 19 Colts Gait Lane, Colts Neck, New Jersey. *See* Plaintiff's Request for Judicial Notice, Exhibit A, Ehren-Schoor 00501-506.

8. Parmer never told Defendant about his personal financial troubles with Red Line, LLC, notwithstanding the company's protracted efforts to collect on its judgment in 2011. *See* Defendant's Deposition at 57, attached as Exhibit B to the Affidavit of J. Nolan in support of Plaintiff's Motion.

9. On April 7, 2011, Parmar advised Defendant that he placed a UCC lien in favor of Schoor in the amount of $160,000 on all his assets, companies, houses and cars. *See* JSOF, #10.

10. On or about April 17, 2012, Parmar asked Defendant to release the lien against the assets of Pegasus Blue Star Fund and MD Tablet. *See* JSOF, #11.

11. Notwithstanding the release of the lien by Defendant, Parmar did not pay Defendant the remaining balance due by June 22, 2012. *See* JSOF, #12.

**B.    The Diversion of the Debtor's Funds**

12. Parmar was the Chief Executive Officer of the Debtor, Constellation Healthcare Technologies, Inc., a consolidated enterprise of several companies aggregated through a series of acquisitions in 2013 which operated in the healthcare sector primarily in revenue and practice management for physician practices. *See* Affidavit of Edith Wong, ¶4.

13. On January 4, 2017, Parmar, instructed Sam Zaharis, the Chief Financial Officer of the Debtor to transfer $160,000 by wire from the Debtor's JP Morgan Chase account, to the account of Defendant. *See* JSOF, #14.

14. The Debtor had to make certain funds transfers from other business accounts into its JP Morgan Chase account in order to pay Defendant the remaining $160,000 due. *See* emails dated January 4 and January 5, 2017 attached as Exhibits 2-4 to the Affidavit of Edith Wong (Ehren-Schoor 039, 046-47).

15.     The Debtor did not have insufficient funds to pay a vendor, instead it made its payment to Porteck India in the amount of $330,000 before the due date of January 6, 2017. *See Id*. (Ehren-Schoor 046-47). *This is a material factual dispute between Plaintiff and Defendant. See* Plaintiff's Additional Statement of Facts, #27.

16.     On January 5, 2017, $100,000 was available and transferred to Defendant and $60,000 was transferred to Defendant the following day when the funds became available. *See* JSOF, #15-16.

17.     Defendant received the $100,000 and $60,000 payments through wire transfers. *See* JSOF, #17.

### C.     Parmar and Zaharis Create a Consulting Agreement In Order to Provide Support for the Transfers

18.     On April 17, 2017, Rachelle Dolan, Orion HealthCorp Inc.'s accounting manager questioned the basis for various CHT payments including the Transfers to the Defendant. *See* email dated April 17, 2017, attached to the Affidavit of Edith Wong, Exhibit 5 (Ehren-Schoor 052).

19.     On May 20, 2017, Zaharis issued an email to Parmar that we "need to come up with an invoice for a reason for payment" referencing the January 5, 2017 $100,000 payment to Defendant. *See* email dated May 20, 2017, attached to the Affidavit of Edith Wong, Exhibit 6 (Ehren-Schoor 055).

20.     On May 21, 2017, Zaharis prepared a Service and Retainer Agreement which identified Defendant as a "consultant" of the Debtor and told Parmar he "needed to beef up the deliverables for the Howard Schoor Agreement in Schedule A." *See* email dated May 21, 2017, attached to the Affidavit of Edith Wong, Exhibit 7 (Ehren-Schoor 056).

21.     On May 22, 2017, Zaharis forwarded a fully executed Consulting Agreement dated August 1, 2016, wherein Defendant Howard Schoor is identified as a consultant of the Debtor. *See*

6

email dated May 22, 2017, attached to the Affidavit of Edith Wong, Exhibit 9 (Ehren-Schoor 068-86).

22.     Defendant concedes that the Consulting Agreement was never signed by him nor did he authorize anyone to sign the agreement on his behalf. *See* JSOF, #18.

23.     Defendant was never a vendor of the Debtor nor did he perform any duties as a consultant for the Debtor, Parmar, or any Parmar related business entity. *See* JSOF, #19.

## LEGAL ARGUMENT

### A.    Standard for Summary Judgment

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) made applicable to this proceeding by Bankruptcy Rule 7056. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The moving party has the burden of demonstrating the absence of a genuine dispute as to any material fact, and all of the inferences to be drawn from the underlying facts must be viewed by the court in the light most favorable to the party opposing the motion. *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (holding that the court's role is "to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."). Accordingly, the moving party must first demonstrate that there is no genuine dispute as to a material fact as to each element of its claim. If it does not, then summary judgment will be denied. *See Smith v. Goord*, 2008 U.S. Dist. LEXIS 26099, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008) (citing *Anderson*, 477 U.S. at 250 n.4), *aff'd*, 375 F. App'x 73 (2d Cir. 2010) (holding that summary judgment should be denied where the moving party does

not show that there is no genuine dispute of material fact with respect to each essential element of the claim).

In this case, as stated above, there is a genuine material dispute of fact regarding whether or not the Debtor had insufficient funds to pay a vendor as a result of making the Transfers to Defendant. Contrary to Plaintiff's position, the Debtor did indeed have sufficient funds to pay the vendor in question, Porteck India. This fact is supported by the Debtor's own emails which show that the Debtor's account manager authorized Porteck India to be paid its full amount due of $330,000 on January 5, 2017, one day before payment to this vendor became due on January 6, 2017. *See* emails dated January 4 and January 5, 2017 attached as Exhibits 2-4 to the Affidavit of Edith Wong (Ehren-Schoor 039, 046-47). Accordingly, viewing these facts in a "light most favorable" to the Defendant, compels the Court to deny Plaintiff's Motion.

Notwithstanding, this material factual dispute, Plaintiff is also not entitled to summary judgment as a matter of law as he has failed to show by clear and convincing evidence that the Debtor, at Parmer's direction, acted with the requisite intent to hinder, delay, or defraud past or future creditors.

**B.** **Based on the Current Record Plaintiff Has Not Proved That the Transfers to Defendant Are Intentionally Fraudulent[1]**

The pending Motion requests summary judgment on Plaintiff's First Claim for relief as filed in his complaint. This First Claim seeks to avoid the Transfers as intentionally fraudulent

---

[1] In addition to Defendant's argument that Plaintiff has failed to carry its burden to prove intentional fraud, Defendant reserves its right to supplement this pleading prior to the return date of the Motion to assert additional facts or arguments related to its affirmative defense that the Debtor received reasonably equivalent value in exchange for the Transfers and that the Transfers were taken by the Defendant in good faith. Defendant reserves this right because Bank of America, a party that Defendant has subpoenaed for bank records, has advised that the records Defendant is seeking are in the possession, custody and control of a separate legal entity. Defendant timely issued a new subpoena to this entity and is still awaiting their response to his document production request.

payments from the Debtor made to satisfy Parmer's personal debts pursuant to Bankruptcy Code § 548(a)(1)(A) and New York Debtor & Creditor Law § 276.[2]

Under Code § 548(a)(1)(A), the Plaintiff must establish three elements to succeed on his claim to avoid a transfer as actually or intentionally fraudulent. These elements are "(i) the transfer of an interest of the debtor in property; (ii) made within two years before the debtor filed for bankruptcy; and (iii) done with 'actual intent to hinder, delay, or defraud' the debtor." *McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 47, 68 (Bankr. S.D.N.Y. 2010) (quoting 11 U.S.C. § 548(a)(1)(A)). The Trustee bears the burden to establish these elements by clear and convincing evidence. *Jacobs v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 661 (Bankr. E.D.N.Y. 2008); *Glinka v. Bank of Vt. (In re Kelton Motors, Inc.)*, 130 B.R. 170, 179 (Bankr. D. Vt. 1991). Under § 548(a)(1)(A), it is only the debtor's intent as transferor that is relevant. *McCord v. Ally Fin., Inc. (In re USA United Fleet, Inc.)*, 559 B.R. 41, 57 (Bankr. E.D.N.Y. 2016). As one court has noted, "it is the intent of the transferor and not the transferee that is relevant for purposes of pleading a claim for intentional fraudulent conveyance." *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005).

Similarly, New York Debtor & Creditor Law § 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in

---

[2] Defendant asserts that New Jersey substantive law should be applied in lieu of New York for Plaintiff's state law based fraudulent transfer claims pursuant to Code § 544(b). This is because New Jersey, and not New York has the most significant contacts to the relevant Transfers and the relevant parties. *See In re Hydrogen*, 431 B.R. 337, 353-54 (Bankr. S.D.N.Y. 2010) (citing choice of law standard applied in NY courts). However, because the relevant *intentional* fraudulent transfer statutes in NY and NJ are effectively the same, Defendant does not seek to assert a choice of law argument for the purposes of this Motion. *See GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006) (holding that under New York conflicts principles, "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved."). Notwithstanding, Defendant reserves his right to assert a choice of law argument at trial or if Plaintiff files a subsequent motion for summary judgment on its fraudulent conveyance claims based on constructive fraud.

law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." NY DCL § 276.  To avoid a transfer as actually fraudulent under this Section, the Plaintiff must establish that (i) the thing transferred has value out of which the creditor could have realized a portion of its claim; (ii) that this thing was transferred or disposed of by debtor; and (iii) that the transfer was done with actual intent to hinder, delay, or defraud. *Kittay v. Flutie N.Y. Corp. (In re Flutie N.Y. Corp.)*, 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004) (citing *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 243 (Bankr. S.D.N.Y. 2000)). Section 276 focuses on the 'actual intent' of the transacting parties and where actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of consideration given." *U.S. v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994).  "The burden of proving actual intent is on the party seeking to set aside the conveyance" and "[s]uch intent must be demonstrated by clear and convincing evidence." *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 934 (S.D.N.Y. 1995).  It is the intent of the transferor and not that of the transferee that is dispositive." *Secs. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 318 (Bankr. S.D.N.Y. 1999) (citing *In re HBE Leasing Corp.*, 61 F.3d at 1059 n.5). Based on the above standards, the dispositive issue of fact under both § 548(a)(1)(A) and NY Debtor & Creditor law § 276 is whether the Debtor, through Parmar, *intended* to hinder, delay, or defraud its past or future creditors when it made the $160,000 payment to the Defendant.

Absent direct evidence, courts may consider certain "badges of fraud" which are circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) (quoting *Wall St. Assocs. v. Brodsky*, 257 A.D.2d 526, 529, 684 N.Y.S.2d 244, 247 (1st Dep't 1999)).  These badges or factors are to be weighed and are not

elements of a claim; instead the presence of multiple badges of fraud lends support to the inference of an intent to defraud creditors, and "the existence of several badges of fraud can constitute clear and convincing evidence of actual intent." *Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.)*, 376 B.R. 390, 405 (Bankr. S.D.N.Y. 2007). In this case, Plaintiff has asserted that the Transfers implicate the same badges of fraud under NY DCL § 276 and § 548(a)(1)(A).

Courts in New York have used the following badges of fraud to determine whether the transferor intended to hinder, delay, or defraud its creditors: (1) the lack or inadequacy of consideration; (2) the family, friendship or other close relationship between the parties; (3) the transferor's retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry. *In re Kaiser*, 722 F.2d 1574, 1582-1583 (2d Cir. 1983). Defendant will address each of these badges in turn.

### i. Plaintiff Has Not Proved A Lack of Consideration

Plaintiff asserts that the Debtor received no consideration for the Transfers since the initial loan proceeds were paid directly to Parmer in June of 2009. However, while it has been stipulated that Defendant made the loan to Parmar on the basis of friendship, the parties also had the understanding that the loan would be used for expenses relating to Parmer's businesses such as payroll. As such, Plaintiff, at this stage, has not proved that the initial proceeds of the loan were not used to fund the Debtor entity. Indeed, the factual record is completely devoid of any evidence of where the initial loan proceeds were spent. Accordingly, Plaintiff has failed to prove by clear and convincing evidence that the Debtor did not receive consideration for the Transfers.

### ii. The Family, Friendship, or Close Association Between the Parties

Defendant and Parmer were former neighbors and had a casual friendship. This friendship was the impetus for Defendant to make the initial loan to Parmer in 2009. However, the parties were not especially close and Parmer never told Defendant about his personal financial troubles which were unfolding in 2011. Further, the relevant parties to the Transfers were the Debtor and Defendant, not Parmer. With this in mind, Plaintiff has presented no evidence that the Debtor and Defendant had a close association. This distinction is important because in order for the Plaintiff to prove his intentional fraudulent transfer claims he must prove that *the Debtor* transferred company funds with the purpose of hindering, delaying, or defrauding its own creditors. As such, Plaintiff has not proffered clear and convincing evidence that the Debtor and Defendant has a close association.

### iii. The Retention of Possession, Benefit, or Use of Property in Question

This badge of fraud asks whether the Debtor retained possession or benefited in any way after the Transfers from the transferred funds. The Plaintiff has provided absolutely no evidence to show that the Debtor somehow continued to control or benefit from the $160,000 in transferred funds. Accordingly, this badge of fraud clearly is not present.

### iv. The Financial Condition of the Party Sought to Be Charged Both Before and After the Transaction in Question

Once again, this badge of fraud concerns the financial condition of the Debtor transferor, not Parmer. *See Messer v. Wei Chu (In re Xiang Yong Gao)*, 560 B.R. 50, 64 (Bankr. E.D.N.Y. 2016); *Rodriguez v. Cyr (In re Cyr)*, 602 B.R. 315, 331 (Bankr. W.D. Tex. 2019). Put simply, while it is obvious that the financial condition of the Debtor declined after the Transfers due to its bankruptcy filing, Plaintiff has not asserted any facts alleging the financial condition of Debtor before the Transfers. Instead, he continues to focus on the pre-transfer financial condition of

Parmer which is irrelevant to this inquiry. As stated above, Plaintiff must prove that *the Debtor* made the Transfers with the intent to hinder, delay, or defraud its own creditors. As such, Plaintiff has failed to prove this factor.

> **v.    The Existence or Cumulative Effect of a Pattern or Series of Transactions or Course of Conduct after the Incurring of the Debt, Onset of Financial Difficulties, or Pendency or Threat of Suits by Creditors; and The General Chronology of the Events and Transactions Under Inquiry**

In his brief, Plaintiff has combined the fifth and sixth badges of fraud. Accordingly, this opposition will do the same. Plaintiff again references Parmer and Zaharis's creation of an allegedly fraudulent consulting agreement to show that the Debtor, at Parmer's direction, engaged in defalcation and misconduct. However, Plaintiff has failed to point to any other instances that the Debtor, whether at the direction of Parmer or another high ranking officer, has engaged in other instances of misconduct or questionable transactions. Accordingly, Plaintiff has not proved that the Debtor engaged in a pattern or series of transactions aimed at delaying or avoiding payment to creditors in the face of law suits or other financial difficulties.

Moreover, Plaintiff continues to rely on the fact that Parmer individually was in financial distress with Red Line Air, LLC in 2011, roughly seven years before the Transfers occurred, to evidence a pattern of conduct. Again, this fact is irrelevant as it is the financial condition of the Debtor as transferor that must be scrutinized. Put simply, the fact that the Debtor at Parmer's direction allegedly misappropriated funds to pay Parmer's personal creditor is not evidence that the Transfers were made with the intention of hindering, delaying, or defrauding the Debtor's past or future creditors. To the contrary, it is only evidence that Parmer sought to convert company funds for his own personal benefit; and while this alleged conduct is clearly wrongful, it fails to prove that the Debtor engaged in a pattern of conduct with the goal of inhibiting its creditors from

receiving payment in due course. Accordingly, Plaintiff has failed to prove that the fifth and sixth badges of fraud are present in this case.

## **CONCLUSION**

Based on the foregoing, Defendant requests that the Court deny Plaintiff's Motion for the Summary Judgment, or in the Alternative, Summary Adjudication in its entirety. Further, should the Court grant Plaintiff's Motion over Defendant's opposition, no attorney's fees should be awarded unless Plaintiff files a motion with this Court setting out his basis for such fees as prescribed by FED. R. CIV. P. 54(d)(2) as made applicable to this proceeding by Bankruptcy Rule 7054.

Respectfully Submitted,

GIORDANO, HALLERAN & CIESLA
A Professional Corporation

By: */s/ Donald F. Campbell, Jr.*
Donald F. Campbell, Jr.
*Attorneys for Defendant Howard M. Schoor*

Dated: March 2, 2021

Docs #4931294-v1